In the Matter of AMSTERDAM CITY HOSPITAL, Appellant, against ROLAND HOFFMAN, as Commissioner of Public Welfare of Montgomery County, Respondent.

Third Department, May 9, 1951.

*Charles E. Hardies, Jr.,* for appellant.

*Chandler S. Knight* for respondent.

BERGAN, J. Before the innovation in the practice made in 1937 by the enactment of article 78 of the Civil Practice Act (L. 1937, ch. 526), there was no Statute of Limitations on mandamus. The timeliness of the former writ and of the later (1920) order of mandamus was regulated judicially. There is today a nominal statutory limitation of time on the institution of the present successor to mandamus; but the control of the subject rests so completely in the hands of the petitioner that there is in effect no limitation.

The statute, which has been given its literal meaning in the course of judicial construction, directs that a proceeding " to compel performance of a duty specifically enjoined by law " must be instituted within four months after the respondent's refusal " upon the demand of the petitioner " to perform his duty. (Civ. Prac. Act, § 1286.)

Since the petitioner decides the time when he will make the demand, he has fully under control the time of the institution of the proceeding which depends on the demand as a preliminary requisite. The court has followed this statutory language exactly the way it reads. In *Matter of Williams* v. *Martin* (297 N. Y. 328, 334), Chief Judge LOUGHRAN remarked that the petitioner was not seeking the review of a determination made by the respondent board, but rather to compel the performance of a duty enjoined by law. " Hence ", he concluded, " the present proceeding was not barred by the four months' limitation defined by section 1286 of the Civil Practice Act ".

In *Matter of O'Connell* v. *Kern* (287 N. Y. 297) the proceeding to compel a municipal civil service commission to perform a duty was instituted within four months of a demand made by

the petitioner, but the demand itself was not made until five months after the commission had acted inconsistently with petitioner's rights. The delay was considered excusable by the court because petitioner did not know the course of the commission's acts as they affected her status in the civil service.

The case before us brings up sharply the question of the effect of a delay in making a demand for the performance of a duty. It seems to require some formulation of policy regulating a long-deferred demand followed by the institution of the proceeding commenced within the literal statutory period allowed after demand.

The petitioner is a hospital; the respondent a county commissioner of public welfare. The petition alleges that from March 31 to August 14, 1947, the petitioner gave care to Nettie Scott who had been admitted to the hospital for a " broken right hip " by the county welfare department and that the county had paid for this care. It alleges that this patient was readmitted to the hospital on August 15, 1947, the day after her discharge, for " a fractured right leg "; remained there for over two years, until August 29, 1949, and that the reasonable value of the services thus furnished was $6,032.02.

It is alleged that the patient was financially unable to pay for the services and was " medically indigent "; that the respondent was " duly notified " of the readmission of the patient four days later, and that the patient was medically indigent and was a public charge on the county. The relief sought is that the respondent as a commissioner of welfare, be compelled to accept the charges for hospital service.

No express demand for the performance by the welfare commissioner of the purported duty to pay this hospital charge is pleaded, but the institution of the proceeding was always treated in mandamus as itself a sufficient demand. The proceeding here was instituted September 19, 1950, more than three years after the admission of the patient to the hospital and the notification of the respondent of the admission, and more than one year after the completion of all the services performed.

A motion was made by the respondent commissioner at Special Term to dismiss the petition on the ground it was insufficient to give ground for the relief sought, and there were affidavits in support of the motion tending to show undue delay by the petitioner and prejudice to the respondent resulting from the delay and the argument continues on appeal that petitioner's delay prejudiced the respondent.

The Special Term dismissed the petition on the ground that from the petition itself and the affidavits submitted by both sides it was established there had been no compliance by the hospital with the provisions of paragraph (c) of subdivision 2 of section 187 of the Social Welfare Law, which provides that the cost of the care of a patient admitted to a hospital in an emergency shall be a charge against a welfare district " only when authorized " by the commissioner.

This paragraph of the statute also requires the hospital to send to the welfare officer " within forty-eight hours of the admission " a report of the facts of the case and a statement by the attending physician of " the necessity of the immediate admission " of the patient. The Special Term held further that compliance with this requirement was not established and discussed in its decision the delay of petitioner in the institution of the proceeding as operating to the prejudice of the commissioner.

The Special Term was justified in finding that neither the petition nor the affidavits show compliance by the hospital with these statutory conditions. The notice was not within forty-eight hours of admission; it was not a report of the facts in writing; it had no physician's statement, and there was no authorization by the commissioner for the hospital service at any time.

But the need for a literal compliance with the provisions of the statute in these respects seems to be no longer an open question in this court in view of the decision in 1946 in *Matter of St. Joseph's Hosp.* v. *Hillman* (270 App. Div. 972, affd. 297 N. Y. 502). There, a patient was admitted to a hospital as an emergency on May 29, 1944, suffering from gunshot wounds. The hospital believed the patient was financially responsible until July 1st when it notified the commissioner of public welfare that he was medically indigent and that his care should be a public charge. The commissioner rejected the charge and refused to authorize its payment.

In a proceeding by the hospital to compel acceptance of the charge the commissioner contended that the failure of the hospital to give forty-eight-hour notice of the admission of the emergency patient as required by the Social Welfare Law relieved him of the obligation to accept the charge and resulted in the assumption of a charitable undertaking by the hospital as a charitable corporation.

Mr. Justice SANTRY at Special Term held that from the time the hospital gave notice on July 1st the commissioner was

required to investigate to determine whether the patient was indigent and entitled to assistance; that if the commissioner determined that he was indigent he could " provide him with hospital care in whatever hospital he might choose "; but that failing to act at all he was required to approve the claim if the patient was in fact indigent.

The final order in the proceeding directed the commissioner to determine as of July 1st whether the patient was a medically indigent person " and if so, to provide for such care ". The timeliness of the proceeding was not raised or considered. This court adopted without any modification the view at Special Term, and it is clear from the statement of the Reporter (297 N. Y. 502, 503) that these points were raised in the Court of Appeals which affirmed without opinion.

The cases are analogues on the merits. The commissioner there followed exactly the same course as here, i.e., he neither determined whether the patient was indigent at the time of notice nor removed the patient to another hospital. If the proceeding here was not taken too late it would seem, therefore, that it should result in a similar order.

Since the judicial construction has been that the general time limits imposed by section 1286 of the Civil Practice Act on article 78 proceedings do not in effect limit relief in the nature of mandamus because the time is literally suspended until there is a demand, the result is that the practice is left in a condition quite like that which existed before the reform of 1937 when there was no Statute of Limitations for mandamus.

We think that the considerations of policy which for many years led the former General Term and later the Appellate Division to require a party seeking the summary compulsion of mandamus to apply promptly or be denied relief for laches, reaches fully the present procedure; and that a demand unduly delayed will bar a relief which was always regarded as discretionary and which in that respect, at least, is continued without change (Civ. Prac. Act, § 1284, subd. 3).

Laches became the basis of denial of relief because mandamus was discretionary and in the exercise of the discretion the court would view the whole situation of the parties and determine what was a prompt assertion of a right (*People ex rel. Vanderhoof* v. *Palmer,* 3 App. Div. 389). A rough approximation of a standard by which laches might be determined was announced by the General Term in *People ex rel. Miller* v. *Justices* (78 Hun 334 [1894]). This was the four months' Statute of Limitations in certiorari. The policy was flexible enough, but it was quite

consistently and for a very long time regarded as a good standard to guide discretion. (*People ex rel. Miller* v. *Justices, supra,* might be compared with *Matter of Williams* v. *Pyrke,* 233 App. Div. 345, decided thirty-seven years later.)

There were instances where an explanation offered for a longer delay in the institution of the proceeding was accepted as satisfactory (*People ex rel. McDonald* v. *Lantry,* 48 App. Div. 131), and the whole matter was looked at in what the Judges felt, and said, was the light of reason.

Where the demand on which the present remedy hangs is unduly delayed, relief ought to be denied. We consider it an unreasonable delay prima facie not to demand that a duty be performed within four months of the time that petitioner knew his rights were adversely affected.

The " refusal " thereafter to perform the duty, resting, of course, in the respondent's control, would in turn govern the four-month period for the institution of the proceeding conformably with the language of section 1286. The time when the petitioner acquired a knowledge that his rights were adversely affected would be determinable as any other fact. There may be circumstances where it would be held that he had constructive knowledge affecting his right to the remedy.

There will, no doubt, also arise under the present practice as under the former, cases which would appeal to the court as excusing a delay in making a demand and in instituting the proceeding. This is not that kind of a case. Here the hospital in one of the affidavits filed by it in the proceeding shows that it had knowledge on June 17, 1948, over two years before the proceeding was instituted, that the respondent contended the welfare department was not responsible for the payment of services to the patient; and it had, of course, a continuous knowledge for more than three years that payment was not being authorized.

There is other proof, undisputed, tending to show that the hospital's negligence caused the second injury to the patient for which treatment began August 15, 1947. When the proceeding was instituted over three years later, the Statute of Limitations had run on any such cause of action in the patient's favor against the hospital to which the respondent might be subrogated. We find a case of laches wholly unrelieved by any good excuse.

The order should be affirmed, with costs.

Order affirmed, with $10 costs.

HEFFERNAN, J. P., BREWSTER, DEYO and COON, JJ., concur.