Aulisi, J.
This is a proceeding under article 78 of the Civil Practice Act in which the petitioner seeks to be reinstated to his civil service position as a criminal hospital attendant at Dannemora State Hospital.
For nearly twenty years, the petitioner, a resident of the City of Plattsburgh, held the position of criminal hospital attendant at Dannemora State Hospital in the competitive class of the State civil service until October 16, 1952, when he was committed to the St. Lawrence State Hospital for observation and treatment. On December 9, 1952, the respondents declared the position vacant by reason of section 30 of the Public Officers Law and the petitioner was so informed within a few days, while he was still confined in said hospital. The director of the St. Lawrence State Hospital executed a certificate on December 11, 1952, stating that he found the petitioner mentally ill and in need of continued care and treatment. This certificate was filed in the office of the Clinton County Clerk on December 15, 1952, and a little more than two weeks later, on December 31, 1952, the petitioner was discharged from said hospital as recovered from the mental illness that had brought about his commitment. Shortly after his discharge he attempted to return to his employment at Dannemora State Hospital but was not permitted to do so. At no time were any charges made against him nor was an opportunity given him to be heard. He then started on a series of efforts with various officials to obtain reinstatement and finally when all these failed, he retained his present attorneys on April 5, 1954. The next day he made a formal demand for reinstatement. This was refused on April 20, 1954, and this proceeding was commenced on July 9,1954.
I am of the opinion that the Commissioner of Correction was in error in declaring the position held by the petitioner vacant because of the latter’s committal to the St. Lawrence State Hospital as it is my belief that the petitioner was not a public official within the meaning of section 30 of the Public Officers Law,
*128 It is not always easy to define the. term “ public officer ” so as to have a definition that will apply and point out the distinction in every case. In general whether either the People or the Legislature create an office or designate a person to perform some function of government, the head of such an office would be a public officer; whereas, if the head of such an office delegates part of his work to a number of persons employed to carry out the details of the work we think the persons so appointed would, generally speaking, be holders of positions. (People ex rel. O’Toole v. Hamilton, 98 App. Div. 59.) The line between a public officer and a public employment has not been too clearly marked by judicial expression probably because the distinction is not too clear. The holder of a public office is in the employment of the public, but all those who are in the public employment are not public officials and do not hold public office. (Matter of Dawson v. Knox, 231 App. Div. 490; Canteline v. McClellan, 171 Misc. 327.)
Here we have an attendant in a hospital for the criminally insane. His duties relate to the physical care of the patients and are of a custodial or housekeeping nature. He oversees their bathing, dressing and feeding and performs tasks for patients who are unable to care for themselves. No technical knowledge is required of the attendant. He is not a peace officer; he is not armed; he exercises little or no independent judgment; he does not expend public funds, keep public records or perform any of the conventional duties of public office.
It is therefore difficult to hold that the petitioner was a public official. He was, however, holding a position in the competitive class of the civil service of the State, appointed after competitive examination and as such an employee was entitled to written notice upon specified charges and given an opportunity to answer and be heard in accordance with the provisions of section 22 of the Civil Service Law. The petitioner was never given any written notice of specific charges nor given the opportunity to be heard.
The respondents urge that this proceeding is barred by the limitations of time under section 1286 of the Civil Practice Act in that the petition and accompanying papers were not served within four months after the action sought to be reviewed became final and binding upon the petitioner. Said section which has been given its literal meaning in the course of judicial construction, directs that a proceeding ‘ ‘ to compel performance of a duty specifically enjoined by law ” must be instituted within *129 four months after the respondent’s refusal “ upon the demand of the petitioner ’ ’ to perform his duty. Since the petitioner decides the time when he will make the demand, he has fully under control the time of the institution of the proceeding which depends on the demand as a preliminary requisite. (Matter of Amsterdam City Hosp. v. Hoffman, 278 App. Div. 292.) So that in a proceeding to compel the performance* of a duty the time limitation of the statute does not begin to run until there has been a demand and a refusal. If relief must always follow in a ease having merit in substance instituted within four months after demand and refusal to perform a duty, the power of indefinite suspension of the limitations of time would reside in the petitioner by a refusal, failure or neglect to make expeditious demand that the duty affecting his rights he performed. This right to suspend-indefinitely the time in which the proceeding may be instituted, by not making demand, runs counter to the general purpose of the Legislature to simplify and co-ordinate the remedies, now afforded by article 78. It admits of the accrual of complex conditions, crystallized and involved by the passing of time. Order and consistency require that the court should refuse a remedy, although otherwise proper, where laches is shown, based upon delay without satisfactory explanation, in the demand of the performance of a duty. (Matter of De Lack v. Greene, 170 Misc. 309.)
This proceeding was initiated on July 9, 1954, by the service of a notice and verified petition upon the respondents following a formal written demand made by the petitioner upon the respondents on April 6, 1954, that he be reinstated to his position as criminal hospital attendant at Dannemora State Hospital. ' The demand was refused by the respondents on April 20, 1954. Therefore, there can not be any question but that the proceeding was commenced within four months after demand and refusal.
The question to be determined in this case is whether the petitioner delayed his demand for such an unreasonable length of time that he was guilty of laches and relief should be denied. I do not believe that the petitioner was guilty of laches. His position had been "declared vacant illegally under section 30 of the Public Officers Law and the only notice which he received from the respondents was a letter sent to him while he was at the St. Lawrence State Hospital as a mentally sick person. Ho charges were ever filed against him as required pursuant to section 22 of the Civil Service Law and he was never given an *130 opportunity to be heard. Upon his discharge from the St. Lawrence State Hospital he immediately made efforts to get his position back. Over a period of many months he saw numerous persons and officials among whom were the president of the Hospital Employees Association, the head of the Volunteer Fire Company, the County Judge, the Assemblyman, the president of the Bar Association, and he also was in touch, directly or indirectly with the respondents and the attorney for the Civil Service Employees Association. When all these efforts failed to restore him to his job he retained his present attorneys on April 5, 1954. Can it be fairly said that this petitioner slept on his rights 1 My answer is “No The question of laches is discretionary with the court and in the interest of justice in this case my discretion will be exercised in favor of the petitioner.
If the petitioner is irresponsible or emotionally unstable, as the respondents contend, they can file written charges against him pursuant to section 22 of the Civil Service Law.
In conclusion I, therefore, hold and decide that the order of the respondents declaring the petitioner’s position vacant should be annulled; that the petitioner should be reinstated to his civil service position with all privileges and seniority rights and payment of his compensation less the amount of wages he has received from any other employment or occupation as provided by section 23 of the Civil Service Law.
An order may be submitted accordingly.