■ COMMUNITY BOARD NO. 3, Respondent, v STATE OF NEW YORK, OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES, et al., Appellants.—In a proceeding pursuant to CPLR article 78, the Office of Mental Retardation and Developmental Disabilities (OMRDD) and its commissioner, and the Young Adult Institute and Workshop, Inc., appeal from a judgment of the Supreme Court, Queens County, dated January 28, 1980, which, *inter alia,* granted the petition and annulled a determination of OMRDD approving the selection of a site and licensing same as a community residence for mentally disabled persons. The appeal brings up for review an order of the same court, entered September 13, 1979, which denied a motion to dismiss the petition. Judgment and order reversed, on the law, without costs or disbursements, motion granted and proceeding dismissed. We find cogent the argument of the appellant sponsoring agency (Young Adult Institute and Workshop, Inc.) that the Padavan Act (see Mental Hygiene Law, § 41.34, L 1978, ch 468, § 2, eff Sept. 1, 1978) is inapplicable to the instant proceeding. We note from the correspondence between petitioner, Community Board No. 3, and appellant OMRDD that the site at 33-32 89th Street, Jackson Heights, New York, was selected for use as a residential community facility for the mentally disabled prior to September 1, 1978, or more precisely, in July of 1978. The relevant correspondence further indicates

that the then Padavan bill was to be used merely as guidelines for structuring and establishing the said community residence. As such, and absent the conclusive applicability of section 41.34 of the Mental Hygiene Law to the development of 33-32 89th Street as a community residence, petitioner is without predicate for its article 78 petition. Moreover, even if we assume the Padavan Act's applicability to the development of the community residence at the location in question, because either the site was selected after September 1, 1978, or because this was the parties' intention by virtue of their correspondence exchanged during the summer and fall of 1978, we would reach the same result (i.e., reversal). We find that the sponsoring agency has substantially complied with the requirements set out in section 41.34 (subd [b], par [4]) of the Mental Hygiene Law relating to the agency's consideration of alternative sites for a community residence (other than the proposed site at 33-32 89th Street) as suggested by the municipality (the petitioner). More particularly, following a rejection of the municipality's suggested alternative sites on grounds of unsuitability (as was the case herein), section 41.34 (subd [b], par [4]) requires that the agency give the municipality 15 days to suggest further alternative sites, before the agency concludes that there is sufficient lack of agreement between the parties with respect to the development of a community residence so as to warrant the agency in scheduling a fact-finding hearing within section 41.34 (subd [b], par [5]) of the Mental Hygiene Law. On the facts presented, the agency (OMRDD) dispatched a written communication to petitioner with respect to the scheduling of a hearing only 10 days after dispatch of a prior communication rejecting petitioner's suggested alternative sites. However, the hearing did not actually take place until 23 days after said rejection on the part of OMRDD, an interval which exceeds the statutory period by eight days. During this time, petitioner neither suggested further alternative sites, nor did it attempt to defer the scheduled hearing until such time as petitioner could posit further alternatives. As such, petitioner's silence during the 23-day prehearing period lends credibility to the agency's contention that the parties were in sufficient disagreement regarding a proposed site, so as to warrant the invocation of a formal hearing under section 41.34 (subd [b], par [5]) of the Mental Hygiene Law. We derive an additional basis for reversal from such silence on petitioner's part, and we find that the 23-day hiatus between rejection of petitioner's alternative sites and the date of the hearing, brings appellants into substantial, if not full, compliance with section 41.34 (subd [b], par [4]) of the Mental Hygiene Law. Moreover, we cannot, in good faith, credit petitioner's allegations regarding the agency's noncompliance with that provision. We find petitioner's allegations highly technical, dilatory, and without merit. We further find that petitioner's application for relief under CPLR article 78 is in the nature of "mandamus to compel" under CPLR 7803 (subd 1), and not a "hybrid" mandamus, prohibition proceeding (CPLR 7803, subd 2) as petitioner contends. As such, the application is subject to the four-month Statute of Limitations prescribed by CPLR 217. Since we find that petitioner elected to bring this CPLR article 78 petition more than four months after the commissioner directed that the subject site be licensed as a community residence, we further find that petitioner is barred by the applicable Statute of Limitations. Technically, a mandamus petition is timely if it is brought within four months of a demand and refusal on the part of the body or officer to perform a duty enjoined upon it by law. Case law indicates that often the petition will be deemed the demand, and the answer thereto the refusal. (See *Matter of Central School Dist. No. 2 v New York State Teachers*

*Retirement System,* 46 Misc 2d 225, affd 27 AD2d 265.) But case law and commentary also indicate that possibilities for abuse inhere in a petitioner's delaying the demand in order to postpone the commencement of the running of the relevant limitations period (see 24 Carmody-Wait 2d, NY Prac, § 145:245, pp 26-27, and cases cited at n 11). As such, a "quasi-laches" defense has been derived to engage and defeat such tactical maneuvering. In the context of a mandamus proceeding, therefore, laches means a protracted delay in making a demand. We find that the defense of laches is applicable to the instant proceeding. Petitioner applied for article 78 relief more than four months after the commissioner determined to license 33-32 89th Street as a community residence for the mentally disabled. During this interval, the license was issued to the sponsoring agency and renovation work was commenced. We therefore feel compelled to agree with OMRDD that petitioner is guilty of "foot-dragging" with respect to bringing its CPLR article 78 application. We find the petition barred by time, pursuant to CPLR 217. The development of 33-32 89th Street, Jackson Heights, New York, as a community residential facility for mentally disabled persons, pursuant to a license and operating certificate issued in the spring of 1979, is to proceed forthwith. Rabin, J. P., Gulotta, Cohalan and Margett, JJ., concur. [102 Misc 2d 501.]