Joseph A. Gavagan, J.
This is an article 78 (Civ. Prac. Act) proceeding instituted by the tenants of an apartment in a public housing project to review and annul the determination of the New York City Housing Authority (hereinafter referred to as the “Authority ”) to evict them as nondesirable tenants. The sole basis for the charge against the tenants is that one of their- *534 three children, a son, 25 years of age, is a confirmed drug addict, three times convicted of narcotics offenses.
There are but few material facts involved in the present proceeding, and they are largely undisputed. The aggrieved tenants with their children have occupied an apartment since 1951 in Astoria Houses, a public housing project in Queens County, owned and operated by the Authority. In October, 1957, the tenants’ son John was arrested for the third time for a narcotics violation and upon his plea of guilty he was given a six months’ sentence which was suspended. About December 1, 1957 the tenants were notified by the Authority that they were not desirable as tenants because their son John had been arrested for the possession of narcotics as a user. The tenants then informed the Authority that John had not lived with them for more than a year prior to December 1, 1957. On December 26, 1957, the tenants received a notice from the Authority that they were ineligible to continue as tenants in the project on the ground of ‘' non-desirability ’ ’. Thereafter, the tenants were given a month’s notice to terminate their tenancy, but they continue to occupy the apartment. On March 3, 1958, the Authority commenced a summary proceeding to evict the tenants and that proceeding is still pending.
The only factual question in the present application concerns the place of residence of the tenants’ son John when he was arrested for the third time. The Authority claims (although no probative facts are proffered to support such claim) that at the time of John’s third arrest he lived with his parents in Astoria Houses and that, even if he did not live there, his presence at the project “ was so continuous and constant as to create * * * dangers and detriments ” to the other tenants, the community or to the property of the Authority. As previously indicated, the tenants allege that John had not lived with them for about a year prior to his last arrest and that during that period he had lived with an uncle in The Bronx. The tenants also allege — and this is without challenge — that from November, 1957 to March 21, 1958 John was in the United States Public Service Hospital at Lexington, Kentucky for treatment of his addiction to narcotics and that upon his release he went to live with his uncle.
The decision in this proceeding should, in iny view, turn on the broad issue of whether the Authority’s determination to evict was reasonable rather than on the narrow factual question of whether the tenants’ son John resided, in or constantly visited their apartment in the project at the time of his third .arrest.
*535 Review of the challenged ruling to evict necessitates consideration of the nature and purpose of the Authority. It is a public corporation created under the Constitution of this State (art. XVIII, § 1) to provide “ low rent housing for persons of low income as defined by law, or for the clearance, replanning, reconstruction and rehabilitation of sub-standard and unsanitary areas ”. Pursuant to the Public Housing Law (L. 1939, ch. 808) the Authority is empowered to construct and operate low-rent public housing projects within New York City. Particular projects of the Authority are financed by the Federal Government, the State of New York or the City of New York. Astoria Houses, where the petitioning tenants reside, is operated by the Authority with financial assistance from the State. The Authority presently operates 86 projects, occupied by more than 98,000 tenants. Each tenant is required to sign a uniform lease for a term of one month, renewable automatically, until either the tenant or the Authority gives one month’s notice of termination to the other. The Authority is exempt from the provisions of the emergency rent laws.
Qualification for tenancy in all the projects under the jurisdiction of the Authority is governed by the Public Housing Law and the eligibility status of the tenants is prescribed by the rules and regulations adopted by the Authority. The regulation under review in the instant proceeding (Resolution 53-6-417 adopted June 25, 1953, as amd.) requires an additional ground for tenant eligibility — “that the tenant or applicant is or will be a desirable tenant.” Section 2c of this regulation provides a standard of eligibility for continued occupancy as follows: “ The standard to be used in approving the eligibility for continued occupancy of a family upon such ground shall be that, in the light of its conduct and behavior while residing in the project, the family does not constitute (1) a detriment to the health, safety or morals of its neighbors or the community, (2) an adverse influence upon sound family and community life, (3) a source of danger or a cause of damage to premises or property of the Authority, (4) a source of danger to the peaceful occupation of the other tenants, or (5) a nuisance.”
The Authority argues that the standard of eligibility it fixed for continued occupancy was reasonable and essential for '‘ the realization (in accordance with the national housing policy as declared by the 81st Congress, Section 2 of the Housing Act of 1949, Public Law 171) as soon as feasible of the goal of a decent home and a suitable living environment for every American family
*536 In addition, it is urged that serious post-war conditions in the projects — -the spread of vandalism, the disturbance of the many law-abiding tenants by a small irresponsible and criminal element, and the development of unsafe conditions on the stairways, elevators and ground — made it imperative for the Authority to establish not only a standard for continued occupancy but to employ its own police force. Viewed in the light of those uncontroverted arguments, there can be no doubt that the Authority’s standard for continued occupancy is reasonable and necessary.
Now, the prime issue in the present proceeding is raised: Did the petitioning tenants, because of their son’s drug addiction, fail to meet the standard for continued occupancy in Astoria Houses. The Authority’s finding that the tenants were ineligible was, as alleged in paragraph 9 of its answer, based on the following facts: “ John Sanders, Jr., a son of the petitioners, is a confirmed drug addict. On April 19, 1953, he was arrested and subsequently convicted of a narcotics violation and sentenced to sixty days in the workhouse. On August 5, 1954, he was again arrested for possession of hypodermic needles and drugs, upon which charge he was convicted and sentenced to ninety days, but sentence was suspended. On October 16, 1957, he was again arrested for unlawful possession of heroin, and upon his plea of guilty thereto he was given a six month sentence in the workhouse which was suspended.” In other words, the finding of nondesirability made by the Authority against the tenants in this proceeding is predicated only on the fact that the tenants’ adult son is a drug addict. The Authority makes the argument that “the pernicious influences of drug addiction are felt not only and not necessarily at the point where the addict may be arrested or at the point where he may happen to administer the drug to himself [but t]he pernicious influence is felt in the community in which he spends his time.” From its experience the Authority reasons that (1) the drug addict tends to involve other tenants, particularly teen-age children, (2) the presence of an addict in a project tends to attract “drug pushers” to sell their evil wares, (3) the drug addict tends to associate with other addicts and criminals in the project, (4) the presence of a known addict tends to make the project unacceptable to normal families, (5) the drug addict tends to become involved in criminal activities to obtain sufficient money for drugs, and (6) the theft of plumbing fixtures from the project is attributable to the need of drug-addicts to finance their drug purchases.
*537 Although the arguments advanced by the Authority are logical, well reasoned and supported by the general theories of the experts in the field of narcotics addiction, such arguments and theories are not applicable to the facts in this proceeding. Here, the only fact adduced is that John has been a drug addict, convicted three times for narcotics offenses. No facts are presented to warrant the conclusion that John committed any overt act detrimental to the health, safety or morals of the other tenants in Astoria Houses, or that his addiction to narcotics was known to the neighbors or the community, or that such addiction was a source of danger or a cause of damage to the Authority’s property or to the peaceful occupation of the other tenants, or that his drug addiction was a nuisance to anyone or to any property. Since, by its own admission, the Authority had knowledge of John’s drug addiction from April, 1953, the dearth of any proof except that he was an addict must be interpreted to mean that no other facts exist pertaining to the nondesirability of the petitioning tenants.
To evict tenants from a public housing project on the sole ground that their adult son is a drug addict exceeds any reasonable requirement for the peaceful occupancy of the project and for the preservation of property. Approval of the Authority’s determination would, in effect, sanction the perpetual isolation from the community of all drug addicts. Such a result is repugnant to current concepts of the problems of drug addiction — whether addiction is viewed as a disease or a crime. It is well to recall that justice, when properly administered, offers the guilty rehabilitation, not retribution, mercy, not misery, hope, not hate.
Mindful of the malignant, pervasive and corrupting evils of the traffic in narcotics, and aware of the worthy desire of the Authority to avoid those evils, I can, however, find no justification for the determination to evict the tenants in this proceeding. The conclusion reached by the Authority is, upon the papers submitted, unsupported in fact and unreasonable. The tenants’ application is therefore granted.
Settle order.