Louis G. Bruhn, J.
This is a proceeding which was instituted on July 20, 1964 pursuant to article 78 CPLR by 105 of the 807 school districts (Employers) against the New York State Teachers Retirement System (System), the New York State Teachers Retirement Board (Board), the individual members of the Board and C. B. Murray, the Executive Secretary of the System.
*227 The petition, as amended on January 29, 1965, is allegedly brought on behalf of the petitioners and all other Employers similarly situated and claims that the respondents in assessing “contributions” against them have acted in violation of the statute governing such contributions. (Education Law, § 517.)
The petitioners’ claims are set forth in the amended petition in five separate causes of action.
In the first cause of action they claim that the Board, at its April, 1962 meeting, assessed a ‘ ‘ deficiency contribution ’ ’ for the school year 1962-63 although they knew, or should have known, that the deficiency balance was nearing liquidation and that the rate fixed was such that enough was collected to create an overcollection which they seek to have refunded.
In the second cause of action they claim that the Board, at its April, 1963 meeting, assessed a further “ deficiency contribution ” at the same rate for the school year 1963-64 illegally since the deficiency balance had not only been completely liquidated but in fact overpaid during the school year 1962-63. They claim further that the Board reaffirmed this action following requests for reconsideration at its March 19, 1964 meeting by a divided vote of 4 to 2.
In the third and fourth causes of action they claim that, since 1958, the Board has been assessing a “ special deficiency contribution” in violation of section 517 (subd. 2, par. c).
In the third cause of action they seek to have the respondents required to abide by the statute and refund the excess contributions to them.
In the fourth cause of action they seek to have the overassessment of the ‘ ‘ special deficiency contribution ’ ’ eliminated and corrected for the future.
In the fifth cause of action they claim that at its March, 1964 meeting the Board illegally assessed a “ normal contribution ” by including components unauthorized by section 517 (subd. 2, par. b).
In addition to denials the respondents have pleaded the Statute of Limitations as well as laches as defenses to this proceeding and for that reason it might be well to examine those questions first.
CPLR 217 provides, in part: “ a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner or the person whom he represents in law or in fact, or after the respondent’s refusal, upon the demand of the petitioner or the person whom he represents, to perform its duty ”. (Italics supplied.)
*228 Apparently, recognizing the dilemma presented to them because of this section, the petitioners are now claiming not only that the respondents have made determinations which were affected by an “ error of law ’ ’ and which were ‘1 arbitrary and capricious” but, in addition, are claiming they “failed to perform a duty enjoined upon [them] by law.” (CPLR 7803, subds. 1, 3.)
Viewing the relief sought as a review of a determination it would appear that, since there is no machinery designed for a hearing and review before the respondents, their determinations became final and binding at the particular meeting at which the determinations were made.
Under those circumstances, the Statute of Limitations would be a bar to all causes of action.
On the contrary, if they urge that the relief they seek is more appropriately one involving a failure to perform a duty enjoined by law then the proceeding becomes one in the nature of mandamus and there seems little doubt that the law requires that type of proceeding, except for laches, to be commenced within four months of a refusal upon demand. (Matter of O’Connell v. Kern, 287 N. Y. 297, 301; Matter of Williams v. Morton, 297 N. Y. 328, 334; Matter of Gimprich v. Board of Educ. of City of N. 7., 306 N. Y. 401, 405.)
It is equally true that, in that type of proceeding, a petitioner cannot delay in making the required demand in order to postpone indefinitely the time within which to institute such a proceeding. (Matter of Amsterdam City Hosp. v. Hoffman, 278 App. Div. 292; Matter of Kleinman v. Kaplan, 20 A D 2d 594.)
Incidentally, in the Kleinman case (supra) the court used this very significant language: “In Matter of Cash v. Bates (301 N. Y. 258), where the civil service appointments were held invalid, the argument that the petition must be dismissed for ‘ untimeliness ’ was rejected in view of the continuing failure of respondent to obey the constitutional directions in respect of civil service appointments. But this treatment of ‘ untimeliness ’ cannot reasonably be read to mean that under all circumstances a petitioner has a right to bring mandamus to challenge civil service appointments whenever he wishes with no possibility that he may be barred by his own laches. The court, with Cash cited to it as a precedent, expressly rejected such a possibility in Austin v. Board of Higher Educ. (5 N Y 2d 430, 442). This was not a civil service case, but the principle laid down is applicable to the general problem of undue delay constituting laches. An aggrieved party may not ‘ extend indefi *229 nitely ’ the period during which he is required to take action 1 by delaying making his demand ’.” (Italics supplied.)
In the case of Matter of Devens v. Gokey (12 A D 2d 135, 136-137, affd. 10 N Y 2d 898) the court stated: “ It is the settled law that the demand must be made within a reasonable time after the right to make the demand occurs or * * * where the petitioner has been misled by the respondent’s conduct, within a reasonable time after he becomes aware of the facts which give rise to his right of relief.” (Italics supplied.)
At page 137 the court further stated:
“ The term does not refer to the equitable doctrine of laches. If there is an unexcused delay in making the demand, the four months’ Statute of Limitations will be deemed to have begun to run at the time the demand should have been made. * * *. The problem in these proceedings is one of the Statute of Limitations and not one of the equitable doctrine of laches and it is immaterial whether or not the delay caused any prejudice to the respondent.
“ Even though we treat a four months’ period as a measure of permissible delay in the making of the demand (Matter of Amsterdam City Hosp. v. Hoffman, supra, p. 297), it would give an aggrieved person four months to make a demand and four months thereafter to bring the proceeding.” (Italics supplied.)
To properly apply these accepted principles it becomes necessary first to establish the date when the right to relief or, in other words, the date when the right to make a demand, arose.
This determination would seem relatively simple since the petitioners concede that the earliest date on which it can be said there was any demand for corrective action by any petitioner was at the April 24, 1964 meeting.
Since the fifth cause of action was not asserted until the service of an amended petition, it might be well to realize there is authority which holds that in a mandamus proceeding the petition itself may be construed as a demand and the answer as a refusal. (Matter of De Lack v. Greene, 170 Misc. 309, 312; Matter of Moskowitz v. La Guardia, 183 Misc. 33, 40, affd. 268 App. Div. 918, affd. 294 N. Y. 830.)
Therefore, whether we regard the petition or the amended petition as the date of the demand and the answer as the refusal and if we take April 24, 1964 as the date of the demand applicable to the first four causes of action we must conclude that the Statute of Limitations would not be a defense were the proceeding regarded as one in mandamus.
However, to say that the Statute of Limitations is no defense is not to say that the same holds true necessarily regarding *230 laches as a defense. (Matter of Singer v. Schechter, 17 A D 2d 204, 206.)
Even though the proceeding itself may have been commenced within the statutory four-month limitation period the question still remains as to whether the demand which was made was made within four months “ after the right to make the demand occurred. ’ ’
There appears to be nothing in this record to justify any inference that the petitioners were misled by any conduct of the respondents so, consequently, no need arises for the application of the alternate rule that the demand, when there has been misleading conduct, must be made within four months after becoming “ aware of the facts which give rise to his right to relief.”
Bearing in mind that, concededly, April 24, 1964 was the earliest date any demand for corrective action was made regarding the first four causes of action, the defense of. laches unquestionably is a bar since the right to make the demand affecting the first cause of action occurred after the April 27,1962 meeting and as to the second cause of action after the April 26, 1963 meeting.
Obviously, in both instances, the interval is well in excess of a permitted four-month period.
The third and fourth causes of action must suffer a similar fate since the interval involved in both of these causes is of an even greater duration since they attack a determination of the Board made prior to 1960.
The defense looms equally as formidable to the fifth cause of action since the rate challenged was adopted at the March 19, 1964 meeting and the earliest any demand was made was with the service of the amended petition which amendment occurred January 29, 1965.
In effect, therefore, even though the petitioners could resist the defense of the Statute of Limitations in a mandamus proceeding they would be completely stymied by the defense of laches.
At first blush because of such conclusion it may appear to be quite unfair that the petitioners will be denied their day in court to test their grievances on the merits but any sympathy in that direction should dissipate with the realization that such result was produced by the petitioners’ own lack of alertness and diligence in protesting any claimed grievances within the time which the courts have decreed to be reasonable.
However, in spite of it all justice may not be completely without virtue since even though the Statute of . Limitations and/or *231 laches were not insurmountable barriers serious questions still exist regarding the petitioners’ probability of success on the merits.
The merits of this controversy involve an interpretation of section 517 (subd. 2, par. e) for the first two causes of action, section 517 (subd. 2, par. c) for the next two canses of action and of section 517 (snbd. 2, par. b) for the fifth and final cause of action.
Apparently, the questions presented are questions of first impression since no authority which could serve as a precedent has been submitted nor found through research.
However, in view of the problem involved guidance might well be found in McKinney’s Consolidated Laws of New York (Book 1, Statutes, 1964 Cum. Supp.) section 129, which provides:
‘ ‘ Where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court’s function is limited. The administrative determination as to construction of a statute is to be accepted by the court if it has warrant in the record and a reasonable basis in law, and judicial function is exhausted, where there is found to be a rational basis for the conclusions approved by the administrative body. Administrative interpretation, however, cannot augment or enlarge constitutional provisions.” (See Matter of Mounting & Finishing Co. v. McGoldrick, 294 N. Y. 104, 109; Red Hook Cold Stor. Co. v. Department of Labor, 295 N. Y. 1, 9; New York Post Corp. v. Kelley, 296 N. Y. 178.)
Furthermore, there is little doubt that “ the practical construction of a statute by * * * public officers whose duty it is to enforce it, acquiesced in by all for a long period of time, is of great importance in its interpretation in a case of serious ambiguity.” (Grimmer v. Tenement House Dept., 205 N. Y. 549, 550; Matter of Weber v. Lang, 11 N Y 2d 997.)
Equating such principles to section 517 (subd. 2, par. e) involved in the first two causes of action there can be little doubt that the language employed by the Legislature ‘ ‘ approved by the retirement board ” was intended to give such Board discretion in the determination of “ the present value * * * of the total liability ’ ’.
No room for argument can exist that to determine the present value of the total liability it is necessary to first establish the total of the components comprising such figure.
If discretion rests in the Board, as undoubtedly it does, to determine “ total liability ” it seems equally logical that, since “present value”, in this context, involves a projected figure *232 comprising many factors, the argument of the petitioners that only “ regular interest ” can be used becomes specious.
The petitioners’ argument that because section 517 (subd. 2, par. b) and other sections expressly direct the use of “ regular interest ” that the Legislature intended its use in section 517 (subd. 2, par. e) without specifically providing for it impresses this court as a non sequitur.
Furthermore, since section 517 (subd. 2, par. e) does not contain any clear mandate requiring the use of “ regular interest since discretion is specially granted the Board by the use of the word ‘ ‘ approved ’ ’ and since pursuant to subdivision 1 of section 504 the Board is chargeable with the “general administration and responsibility for the proper operation of the retirement system ’ ’, it appears that a legislative intent to grant discretion to the Board cannot be denied. 1
Such conclusion leads, of course, to, the general rule “that mandamus will not lie to compel the performance of a power the exercise of which lies in the discretion of the officer against whom the writ is sought ” except “ that the action of the officer must not be capricious or arbitrary ”. (People ex rel. Empire City Trotting Club v. State Racing Comm., 190 N. Y. 31, 33.)
Turning then to the third and fourth causes of action the issue is simply whether the “ special deficiency contribution ” formula under section 517 (subd. 2,'par. c) can reasonably be interpreted as directing the Board to compute a constant rate based initially on a 30-year assumption as it did and has been doing since 1958 or interpreted as directing the Board to compute a constant annual payment to be assessed at varying rates over an inflexible 30-year period.
Strangely enough the petitioners do not deny that the respondents’ interpretation is unreasonable or impossible but choose instead to rest their case on the basis that their interpretation is preferable because it puts a less burdensome impact upon the school districts.
In view of the foregoing principles such a contention cannot succeed in an article 78 proceeding.
In the fifth cause of action, involving an interpretation of section 517 (subd. 2, par. b), the petitioners again find themselves in a dilemma. They cannot succeed by a contention that their interpretation is a possible one and must fail because they cannot adequately demonstrate that the respondents’ interpretation had no reasonable basis in law.
Certainly after reading the voluminous affidavits of the expert for each of the parties one might be moved to conclude that possibly the decisions of the Board should be in keeping with *233 the contentions of the petitioners rather than the respondents but one cannot be moved to conclude that the respondents’ determinations were arbitrary or capricious and had no ‘ ‘ warrant in the record ” or “ reasonable basis in law. ’ ’ Disagreement among experts as to which avenue of operation may be the best should not form the predicate to upset a determination made by a Board vested with discretion and exercising it in an area controlled by a “ rational basis.”
Furthermore, it is a cardinal principle of law that “ [a] mandamus order may issue only for the enforcement of a clear legal right; and even after such right has been established, the court must determine whether, in the exercise of a sound discretion, it should grant or withhold the order.” (Matter of Durr v. Paragon Trading Corp. 270 N. Y. 464, 469; Matter of Small v. Moss, 277 N. Y. 501, 513.)
Tested by such standard it is this court’s opinion that in the first place the petitioners have failed to demonstrate a clear legal right to the relief they seek in any cause of action and even if they had so demonstrated this court, under all the facts and circumstances presented and in the exercise of its discretion, would deny mandamus.
For the reasons stated, the application is denied.