James HOLMES et al., Plaintiffs-
Appellees,

v.

NEW YORK CITY HOUSING AUTHOR-
ITY, Defendant-Appellant.

No. 442, Docket 31972.

United States Court of Appeals
Second Circuit.

Argued April 24, 1968.

Decided July 18, 1968.

Harold Weintraub, New York City (Harry Levy, New York City, on the brief), for defendant-appellant.

Nancy E. LeBlanc, New York City (Harold J. Rothwax, and Michael B. Rosen, New York City, on the brief), for plaintiffs-appellees.

Before HAYS, ANDERSON and FEINBERG, Circuit Judges.

ANDERSON, Circuit Judge:

This class action was brought on September 9, 1966 by 31 named plaintiffs on behalf of themselves and all others similarly situated under the Civil Rights Act, 42 U.S.C. § 1983, and the Federal Constitution, challenging the procedures employed by the defendant New York City Housing Authority in the admission of tenants to low-rent public housing projects administered by it in New York City. The jurisdiction of the district court is predicated upon 28 U.S.C. § 1343(3).

The New York City Housing Authority is a public corporation created pursuant to the Public Housing Law of the State of New York for the purpose of implementing the State Constitution by providing "low-rent housing for persons of low income as defined by law * * *" New York State Constitution, Art. XVIII, § 1. At the time of the complaint in this action, the Authority was providing housing facilities for more than 500,000 persons, in 152 public projects which it owned and administered in New York City. Approximately half of these were federal-aided projects, the remainder being supported by either State or local funds.

The eligibility requirements for prospective public housing tenants are set out in the Public Housing Law, and in resolutions adopted by the Authority pursuant to its rule-making power. Public Housing Law, § 37(1) (w). While these vary somewhat for federal, state, and local-aided projects two requirements common to all are that the applicant's annual income and total assets not exceed specified limits, and that, at the time of admission, the applicant have been a resident of New York City for not less than two years. In addition each candidate must be situated in an "unsafe, insanitary, or overcrowded" dwelling Resolution No. 62–7–473, § 3 (federal-aided projects), or living "under other substandard housing conditions," Resolution No. 56–8–433, § 4 (state-aided projects). Each of the plaintiffs in the present action is alleged to meet these requirements.

Each year the Authority receives approximately 90,000 applications out of which it is able to select an average of only 10,000 families for admission to its public housing projects. In doing so the Authority gives preference to certain specified classes of candidates, e. g., "site residents," families in "emergency need of housing," "split families," "doubled up and overcrowded families." Resolution No. 56–8–433, § 4.

In federal-aided projects the Authority is required to allocate the remaining apartments among non-preference candidates in accordance with "an objective

scoring system" which is designed to facilitate comparison of the housing conditions of these applicants. Resolution No. 62–7,473, § 4(b). For state-aided projects, however, there is no similar regulation and we assume that this is also the case with local-aided projects.[1] The plaintiffs in this action are all non-preference candidates seeking admission to any of the public housing projects run by the defendant.

In the complaint the named plaintiffs allege that although they have filed with the Authority a total of 51 applications for admission to its housing facilities, 36 in 1965 or earlier, and some as long ago as 1961, none has been advised in writing at any time of his eligibility, or ineligibility, for public housing.

The complaint cites numerous claimed deficiencies in the admissions policies and practices of the Authority. Regulations on admissions (other than those pertaining to income level and residence) are not made available to prospective tenants either by publication or by posting in a conspicuous public place. Applications received by the Authority are not processed chronologically, or in accordance with ascertainable standards, or in any other reasonable and systematic manner. All applications, whether or not considered and acted upon by the Authority, expire automatically at the end of two years. A renewed application is given no credit for time passed, or precedence over a first application of the same date. There is no waiting list or other device by which an applicant can gauge the progress of his case and the Authority refuses to divulge a candidate's status on request. Many applications are never considered by the Authority. If and when a determination of ineligibility is made (on any ground other than excessive income level), however, the candidate is not informed of the Authority's decision, or of the reasons therefor.

■ The complaint charges that these procedural defects increase the likelihood of favoritism, partiality, and arbitrariness on the part of the Authority, and deprive the plaintiffs of a fair opportunity to petition for admission to public housing, and to obtain review of any action taken by the Authority. The deficiencies are alleged to deprive applicants of due process of law in violation of the Fourteenth Amendment to the Federal Constitution.[2]

In the district court the defendant moved to dismiss the complaint for failure to state a claim within the court's civil rights jurisdiction. Alternatively it requested that the court refrain from the exercise of its jurisdiction under the doctrine of abstention.

On October 20, 1967, the motion was denied by the trial court which also refused abstention. Thereafter permission was granted to the defendant to take this interlocutory appeal under 28 U.S.C. § 1292(b). The issues here are whether the plaintiffs have stated a federal claim,[3] and, if so, whether the district court should proceed to the merits. We have concluded that the district judge was correct in answering each of these points in the affirmative and we, therefore, affirm his order.

■ Clearly there is sufficient in the complaint to state a claim for relief under § 1983 and the due process clause.

1. Resolutions of the Authority governing admissions to local-aided projects have not been made a part of the record on appeal.

2. The constitutional claims in the complaint are directed at local Resolutions or regulations (or the lack thereof) issued by the Authority, which have effect only within the City of New York. Public Housing Law § 31. No specific provision of the Public Housing Law, or any other statute of general statewide application is called into question. Accordingly, a three-judge court is not required by 28 U.S.C. § 2281. See e.g., Moody v. Flowers, 387 U.S. 97, 101–102, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967).

3. While this issue was not specifically mentioned in the defendant's § 1292(b) papers, we have decided to consider it in view of its close relationship to the other question, both of which have been fully briefed by the parties.

One charge made against the defendant, which has merit at least in connection with state-aided projects where the Authority has adopted no standards for selection among non-preference candidates, is that it thereby failed to establish the fair and orderly procedure for allocating its scarce supply of housing which due process requires. It hardly need be said that the existence of an absolute and uncontrolled discretion in an agency of government vested with the administration of a vast program, such as public housing, would be an intolerable invitation to abuse. See Hornsby v. Allen, 326 F.2d 605, 609–610 (5 Cir. 1964). For this reason alone due process requires that selections among applicants be made in accordance with "ascertainable standards," id. at 612, and, in cases where many candidates are equally qualified under these standards, that further selections be made in some reasonable manner such as "by lot or on the basis of the chronological order of application." Hornsby v. Allen, 330 F.2d 55, 56 (5 Cir. 1964) (on petition for rehearing). Due process is a flexible concept which would certainly also leave room for the employment of a scheme such as the "objective scoring system" suggested in the resolution adopted by the Authority for federal-aided projects.[4] ·

■ There is no merit in the Authority's contention that the plaintiffs are without standing to raise the due process objection. As applicants for public housing, all are immediately affected by the alleged irregularities in the practices of the Authority. Compare Thomas v. Housing Authority of City of Little Rock, 282 F.Supp. 575 (E.D.Ark.1967); Banks v. Housing Authority of City & County of San Francisco, 120 Cal.App.2d 1, 260 P.2d 668 (Dist.Ct.App.1953), cert. de-

nied, 347 U.S. 974, 74 S.Ct. 784, 98 L.Ed. 1114 (1954); cf., Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920 (2 Cir. June 7, 1968).

■■ The mere fact that some of the allegations in the complaint are lacking in detail is not a proper ground for dismissal of the action. Harman v. Valley National Bank of Arizona, 339 F.2d 564, 567 (9 Cir. 1964); 2A Moore's Federal Practice ¶ 12.08, at 2245–2246 (2d ed. 1968). A case brought under the Civil Rights Act should not be dismissed at the pleadings stage unless it appears "to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Barnes v. Merritt, 376 F.2d 8, 11 (5 Cir. 1967). This strict standard is consistent with the general rule. See 2A Moore's, supra at 2245. Clearly it has not been met here.

The principal argument which the Authority has pressed on this appeal is that the district court should have refused to exercise its jurisdiction under the judicially-created "abstention" doctrine, which recognizes circumstances under which a federal court may decline to proceed with an action although it has jurisdiction over the case under the Constitution and the statutes. See generally Wright on Federal Courts § 52, at 169–177 (1963). We agree with the district judge that this is not an appropriate case for abstention.

■ At least in actions under the Civil Rights Act the power of a federal court to abstain from hearing and deciding the merits of claims properly brought before it is a closely restricted one which may be invoked only in a narrowly limited set of "special circumstances." Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); cf. Allegheny Coun-

4. The possibility of arbitrary action is not excluded here, however, by the existence of this reasonable regulation. The "scoring system" scheme will hardly assure the fairness it was devised to promote if, as the plaintiffs allege, some applicants, but not others, are secretly rejected by the Authority, are not thereafter in-formed of their ineligibility, and are thereby deprived of the opportunity to seek review of the Authority's decision, as provided by New York law under CPLR § 7803(3). Cf. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1955).

ty v. Frank Mashuda Co., 360 U.S. 185, 188–189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). In enacting the predecessor to § 1983 Congress early established the federal courts as the primary forum for the vindication of federal rights, and imposed a duty upon them to give "due respect" to a suitor's choice of that forum. Zwickler v. Koota, supra, 389 U.S. at 247–248, 88 S.Ct. 391; Harrison v. N. A. A. C. P., 360 U.S. 167, 180–181, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959) (dissenting opinion). As a consequence it is now widely recognized that "cases involving vital questions of civil rights are the least likely candidates for absention." Wright v. McMann, 387 F.2d 519, 525 (2 Cir. 1967). See also McNeese v. Board of Education, etc., 373 U.S. 668, 672–674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Stapleton v. Mitchell, 60 F.Supp. 51, 55 (D.Kan.), appeal dismissed per stipulation, 326 U.S. 690, 66 S.Ct. 172, 90 L.Ed. 406 (1945); Note, Federal-Question Abstention: Justice Frankfurter's Doctrine in an Activist Era, 80 Harv.L. Rev. 604, 607–611 (1967); Note, Judicial Abstention from the Exercise of Federal Jurisdiction, 59 Col.L.Rev. 749, 768–769 (1959). Where a district judge chooses to exercise his equitable discretion in favor of retaining such an action it will be unusual indeed when an appellate court refuses to uphold his decision. Cf., Harrison v. N. A. A. C. P., supra; Note, Federal Judicial Review of State Welfare Practices, 67 Col.L.Rev. 84, 98–100 (1967).

Nevertheless the Authority vigorously contends that the district court should have deferred to the courts of the State of New York, where an adequate remedy is said to be provided under state law, in order to avoid "possible disruption of complex state administrative processes," Zwickler v. Koota, supra 389 U.S. at 249 n. 11, 88 S.Ct. at 396, which it envisions as the inevitable result of an attempt by the federal court to resolve the issues presented in the complaint.

■ We fail to see how federal intervention in the present case will result in any substantial way in the disruption of a complex regulatory scheme of the State of New York, or in interference from the outside with problems of uniquely local concern. The Authority clearly does direct and control a complex administrative process, much of which is concerned with the establishment of standards and policies for the admission of tenants, a function which Congress has recognized that localities are "in a much better position than the Federal Government" to perform. S.Rep. No. 281, 87th Cong., 1st Sess. (1961) in 2 U.S. Code Cong. & Ad. News, pp. 1943–1944. But the complaint in this action wages only a very limited attack on that process, and in no sense does it seek to interpose the federal judiciary as the arbiter of purely local matters. Rather the plaintiffs assert a narrow group of constitutional rights based upon overriding federal policies, and ask federal involvement only to the limited extent necessary to assure that state administrative procedures comply with federal standards of due process. This fundamental concept hardly can be said to be "entangled in a skein of state law that must be untangled before the federal case can proceed," McNeese v. Board of Education, supra 373 U.S. at 674, 83 S. Ct. at 1437. Nor do we see here any "danger that a federal decision would work a disruption of an entire legislative scheme of regulation." Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 329, 84 S.Ct. 1293, 1296, 12 L.Ed.2d 350 (1964). In fact the issue in the present case arises out of a total lack of any system for the orderly processing of applications and notification to applicants outside of the few categories mentioned.

■ The ground for federal absention upon which the Authority relies derives from the Supreme Court's decisions in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), discussed in Note, 59 Col.L.Rev.,

supra at 757–762.[5] But in those .cases the federal courts were asked to resolve problems calling for the comprehension and analysis of basic matters of state policy, see 319 U.S. at 332, 63 S.Ct. 1098; 341 U.S. at 347, 71 S.Ct. 762, which were complicated by non-legal considerations of a predominantly local nature, and which made abstention particularly appropriate. In contrast to the present case which presents only issues of federal constitutional law, *Burford* and *Alabama* involved situations to which concededly the "federal courts can make small contribution." 319 U.S. at 327, 63 S.Ct. at 1104. Equally important as a distinguishing factor is the fact that the state legislatures in those cases had specially concentrated all judicial review of administrative orders in one state court, see 319 U.S. at 325–327, 63 S.Ct. 1098; 341 U.S. at 348, 71 S.Ct. 762; Note, 59 Col.L.Rev., supra at 759–760, in effect designating the state courts and agencies as "working partners" in the local regulatory scheme. 319 U.S. at 326, 63 S.Ct. 1098. While this might be said to hold true in future cases in New York where the Authority makes a specific determination of ineligibility affecting a particular applicant for public housing,[6] it is certainly not so here where the very concern of the plaintiffs is that no such determinations have been made, and where New York law provides a remedy for the plaintiffs' ills which is dubious at the very best.[7] What we have just said also serves to

5. *Burford* involved an attack in the district court on a proration order issued by the Texas Railroad Commission as part of a complex state regulatory program devised for the conservation of oil and gas in Texas. *Alabama* was an action in the federal court challenging an order of a state regulatory commission in which a railroad was refused permission to discontinue certain of its intrastate train service. In each case the Supreme Court ordered the federal suit dismissed on the ground that it involved issues of a peculiar local interest regarding which the particular state concerned had established a specialized regulatory system for both decision and review.

6. Judicial review in the New York courts is available to any rejected public housing applicant under CPLR § 7803(3), where he may question "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion * * *." Once an administrative procedure has been instituted by the Authority which in all respects complies with Federal constitutional standards, then the great majority of claims arising out of the acceptance or rejection of applicants by the Authority will be matters entirely within the purview of the State courts, which sit in a "much better position * * * to ascertain the myriad factors that may be involved in a particular situation and to determine their proper weight." S.Rep. No. 281, 87th Cong., 1st Sess. (1961) in 2 U.S.Code Cong. & Ad.News, at p. 1944; cf., Austin v. NYCHA, 49 Misc.2d 206, 267 N.Y.S.2d 309 (1966); Sanders v. Cruise, 10 Misc.2d 533, 173 N.Y.S.2d 871 (1958).

7. The only possibility for relief in the state courts in the present case where no determination as to the eligibility of any of the plaintiffs has been made, is by way of mandamus under § 7803(1), brought to compel the Chairman or Executive Director of the Authority "to perform a duty enjoined upon [him] by law," i.e., to issue regulations to remedy the procedural defects alleged in the complaint, as he is empowered to do under Resolutions applicable to both federal and state-aided projects. See Res.No. 56-8-433, § 9(i), (iii), and (iv); Res.No. 62-7-473, § 10(i), (ii), and (iv). We do not think, however, that this section would provide the plaintiffs a "plain, adequate and complete" remedy in the state courts, Potwora v. Dillon, 386 F.2d 74, 77 (2 Cir. 1967), a necessary precondition to abstention. Compare Wright v. McMann, 387 F.2d 519, 523–524 (2 Cir. 1967). The restrictive New York case law supports this conclusion. See, e.g., Gimprich v. Board of Ed. of City of New York, 306 N.Y. 401, 118 N.E.2d 578 (1954) (mandamus does not lie to compel an act of administrative discretion); Grand Jury Ass'n of New York County, Inc. v. Schweitzer, 11 A.D.2d 761, 202 N.Y.S.2d 375 (1960) (petitioner must show "clear legal right" to mandamus); C.S.D. No. 2 of Towns of Coeymans, et al. v. New York State Teachers Retirement System, 46 Misc.2d 225, 259 N.Y.S.2d 585 (1965) (even then, relief may be denied in court's discretion).

distinguish the recent case of Randell v. Newark Housing Authority, 384 F.2d 151 (3 Cir. 1967), cited by both parties, where the federal court action was "closely tied" to various landlord- and tenant actions already pending before the courts of New Jersey. 384 F.2d at 157, n. 15.

Equitable considerations also favor the result reached by the district judge. The 31 named plaintiffs speak not only for themselves, but also for thousands of New York's neediest who may have been unfairly entrenched in squalor due to the alleged inadequacies of the Authority's procedures. The need for relief is thus immediate, and should not be aggravated further by delay in the courts. See Baggett v. Bullitt, 377 U.S. 360, 378–379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Allegheny County v. Mashuda Co., supra 360 U.S. at 196–197, 79 S.Ct. 1060; England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 425–427, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (Justice Douglas concurring); Note, 80 Harv.L.Rev., supra at 606–607.

The order of the district court is affirmed.

HAYS, Circuit Judge (dissenting):

I dissent.

The plaintiffs allege that applicants for public housing are not notified as to whether they are eligible, that they must refile their applications every two years and do not get priority because of earlier filing, and that the Housing Authority has not published and posted its regulations regarding selection of tenants. These complaints hardly seem to raise federal constitutional questions. See Chaney v. State Bar of California, 386 F.2d 962 (9th Cir. 1967), cert. denied, 390 U.S. 1011, 88 S.Ct. 1262, 20 L.Ed.2d 162 (April 8, 1968); Powell v. Workmen's Comp. Board etc., 327 F.2d 131 (2d Cir. 1964); Sarelas v. Sheehan, 326 F.2d 490 (7th Cir. 1963), cert. denied, 377 U.S. 932, 84 S.Ct. 1334, 12 L.Ed.2d 296 (1964).

But even if we assume that some constitutional issues are raised, there are no allegations which tend to show that the individual plaintiffs have been denied rights. We should not entertain such a vague, uncertain, abstract and hypothetical complaint. See Birnbaum v. Trussell, 347 F.2d 86 (2d Cir. 1965).