**Victor P. CUBELLIS, Plaintiff,**

**v.**

**Alexander COSTAR et al., Defendants.**

**Civ. A. No. 74–400.**

United States District Court,
W. D. Pennsylvania.

Sept. 10, 1974.

Frank G. Verterano, New Castle, Pa., for plaintiff.

P. Raymond Bartholomew, Sharon, Pa., for defendants Costars.

Joel B. Strauss, Asst. U. S. Atty., Pittsburgh, Pa., for defendant U. S.

## OPINION

ROSENBERG, District Judge.

The plaintiff, Victor P. Cubellis, filed a complaint, as amended, at the above entitled number, against the defendants, Alexander Costar and Mary L. Costar, his wife, and the Secretary of the Army, United States of America and the District Engineer for the Corps of Engineers, Pittsburgh District, seeking both preliminary and permanent injunctive relief against an alleged eviction of his trailer from the Marina Park in Clark, Pennsylvania. In response the defendants, the operators of the park, Alexander Costar and his wife, Mary L. Costar, filed a motion to dismiss the complaint. The Secretary of the Army and the District Engineer for the Corps of Engineers also filed a motion to dismiss. Briefs were submitted and a hearing had on the motions.

The plaintiff alleges in his complaint that he is a citizen and resident of New Castle, Pennsylvania; that he had a written lease from the defendants Costars for the term of five months for the use of a certain plot of land upon which to keep a recreation trailer; that the lease expired on November 15, 1973, but that he obtained an oral lease to remain in possession until May 1, 1974; that the recreation area is owned by the United States Government; that the land is leased by the United States Government to the defendants Costars and that the Costars variously sublet parts of their leasehold; that the lease from

the Government to the Costars provides for the supervision, general control and regulation of all sub-tenants in accordance with the requirements of the Government; that the lease from the United States to the defendants Costars is for the term of 25 years from August 8, 1967 to August 7, 1992; that during the term of the oral lease between the Costars and the plaintiff, the Costars by a writing dated November 15, 1973, informed the plaintiff that his lease would not be renewed and that his camping privileges would be terminated on May 1, 1974; that by reason of the ownership by the Government of this land for recreation purposes for the general public, the defendants Costars cannot impose any limited term or leasehold upon the plaintiff; that the attempt of the defendants Costars to evict the plaintiff without providing him with a reason is in violation of the Fifth and Fourteenth Amendments relating to due process and is in violation of the National Parkways Act, 16 U.S.C. § 460d and the Civil Rights Act, 42 U.S.C. § 1981 et seq.; and that because the land basically owned by the United States Government is for recreation purposes of the public as a whole, it creates in its occupants rights similar in character to the property rights recognized in low-cost housing projects which are federally financed or subsidized.

The defendants Costars, by their motion to dismiss, attack the plaintiff's complaint as being invalid on its face because no state action is here involved or threatened; that the plaintiff has no contractual right justifying his continuing occupancy of the premises; that the fact that the land is basically owned by the United States Government does not automatically give this court jurisdiction; and that there are no legal precedents or authority to force the defendants Costars to renew the camping privileges for the plaintiff's trailer.

The defendants', the Secretary of the Army and the District Engineer for the Corps of Engineers, in their motion to dismiss rely, in substance, upon the same bases as the Costars. Additionally, however, these defendants also raise the defense of sovereign immunity.

■■ When considering a motion to dismiss a complaint, the court must view all the allegations contained therein as true. Gardner v. Toilet Goods Assn., 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). In particular, a Civil Rights Act suit should not be dismissed at the pleadings stage unless it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim. Holmes v. New York City Housing Authority, 398 F.2d 262, C.A. 2, 1968.

This action finds no legal authority upon which it may rely. Counsel for the plaintiff has admitted this at the hearing. The plaintiff seeks to embrace this case in the category of public housing actions where municipal or authority landlords have sought to evict tenants without notice and without hearing. There are, however, differences between the two categories.

As stated in the National Housing Act, 12 U.S.C. § 1701t: "The Congress affirms the national goal, as set forth in section 1441 of Title 42, of 'a decent home and suitable living environment for every American family'." This policy was also enunciated in the Housing and Urban Development Act of 1965, Pub.Law 89–117, 79 Stat. 451 (August 10, 1965). Accordingly, the courts have supported this Congressional purpose of these enactments as the plaintiff correctly asserts in the case of public housing projects. But none of these are applicable to the allegations of the instant case.

In Joy v. Daniels, 479 F.2d 1236, C.A. 4, 1973, the findings recognized a public housing lessee's property right, terminable only by cause other than lease expiration, because of the Congressional policy of "providing a decent home

with stability and security) for every American family, and of prohibiting arbitrary and discriminatory action, bolstered by FHA regulations and customs . . . ."

In McQueen v. Druker, 317 F.Supp. 1122 (D.C.Mass., 1970), the District Court held that the landlord financially assisted by Federal and State funds may not evict a tenant without giving him a notice specifying good cause. Again, however, this was based upon the legislative goal of decent housing. The court said at page 1129:

" . . . the general goal of both national and state housing programs is to provide for the necessitous persons a decent home and a suitable living environment. This includes adequate, safe, and sanitary quarters. But it also implies an atmosphere of stability, security, neighborliness, and social justice."

None of these apply to summer trailers in a recreation center. Here the regular domicile of the plaintiff is in New Castle. It cannot be said under these circumstances that the trailer in the park "provide[s] for the necessitous persons a decent home and a suitable living environment."

In the present situation the Government provided no residential or living quarters for the needy portion of our nation, but provided only recreation facilities. We have no expression from Congress which would entitle an occupant of the land for the summer use of his trailer to occupy the land beyond the term of his lease. Although the plaintiff did not provide information in the complaint regarding the manner or acquisition of the land and the purpose of its use, I may reasonably infer because of judicial experience in this connection that the land for recreation purposes was a by-product of Federal flood control planning for the area. This, however, is only a presumption and I do not base my determination on this.

What concerns me are the issues which have been raised here: Does the lessee in possession of this property under the written and oral lease have a continuing right of possession after the termination of such lease and in violation of the agreement? Does a district court possess the jurisdiction to interfere with the contractual rights of the parties here by reason of the raising of the defense of constitutional and statutory rights by one of the parties? Does the Commonwealth of Pennsylvania by reason of the potential right to use its law to evict tenants and because of various boating or game laws provide a sufficient basis for applying the provisions of the Civil Rights Act, 42 U.S.C. § 1981 et seq.?

In order to reach any consideration of the violation of constitutional rights or governmental action as it pertains to jurisdiction of the district court, there must be a right of some type in the plaintiff. As already noted, the fact of a specifically stated Congressional policy in the area of publicly financed low income housing, does not authorize me to automatically transfer that right to a continuing occupancy to federally owned, but privately operated, recreation property. Thus, if any such right is present in the instant plaintiff outside of his lease contract right, it must be established from the legislative or administrative policies pertaining directly to recreation facilities or areas. No such policy has been argued here.

The lease from the Federal Government to the Costars provides that "The lessee understands that the primary objective of the Government in granting this land is to obtain services and facilities adequate to meet the *public demand* at reasonable charges to the *public*." (Emphasis added). Further, 16 U.S.C. § 460d, which authorizes such leases, states that they are to be granted "for such purpose as he (the Secretary of the Army) may deem reasonable in the *public interest* . . . ." (Empha-

sis added). It is not apparent to me how the public interest can be fulfilled in a recreation area allowing those who apply first for a property lease for a specified term to maintain a judicially enforceable interest in such property perpetually or for as long as they desire. To approve such a situation would in reality be to permit public land to be subjected to a monopoly. "First-come, first-served" does not fit the public interest in this particular case.

The plaintiff admits that there is no precedent for his position. A study of the authorities has convinced me that it would be inapropos to analogize the numerous cases dealing with federally assisted housing facilities to the situation presented here. The plaintiff resides in New Castle, Pennsylvania and uses the recreation property in question for summer leisure activities. I cannot conceive that the legislation authorizing such leases contemplated, in effect, the right to permanent occupancy.

In accordance with the allegations set forth in the complaint, I am unable to find any right in the plaintiff to pursue a civil rights action against any individual or against the Government of the United States. No state action exists in this case. As for the violation of any constitutional rights of the plaintiff, the plaintiff's rights exist only by virtue of his leasehold. Because there is no authority which the plaintiff can borrow from the law in the low-cost housing decisions, he has only the authority that is vested in him by virtue of his lease contract and he is bound to observe the lease contract as equally as is any other party who binds himself to perform according to contract.

Under the circumstances the complaint presents no factual or legal matter by which the plaintiff can support his cause of action. Inasmuch as I can find no recognizable legal right upon which the plaintiff can legitimately base his action, I must grant the motions for dismissal. In doing so I find it unnecessary to consider the contentions of sovereign immunity which have been raised.

Accordingly, for the reasons here set forth, the motions to dismiss as filed by the defendants, Alexander Costar and Mary L. Costar, his wife, and the Secretary of the Army and the District Engineer of the Corps of Engineers, will be granted.