# Supreme Court of the Navajo Nation

**James Atcitty and Ralph Begay,**
**Petitioners,**
**v.**
**The District Court for the Judicial District of**
**Window Rock, Victoria Benally, Benjamin Dawes,**
**David Todacheeny, Zelma Todacheeny, and**
**Cheryl Todacheeny,**
**Respondent and Real Parties in Interest.**
**Decided October 16, 1996**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and CADMAN, Associate Justices.

Herb Yazzie, Esq., Attorney General of the Navajo Nation, and Steven L. Bunch, Esq., Assistant Attorney General, Window Rock, Navajo Nation (Arizona), for the Petitioners; and Helen Ann Yunis, Esq., and Terese Yanan, Esq., DNA-People's Legal Services, Inc., Shiprock, Navajo Nation (New Mexico), and Veronika Fabian, Esq., DNA-People's Legal Services, Inc., Window Rock, Navajo Nation (Arizona), for the Real Parties in Interest.

Opinion delivered by AUSTIN, Associate Justice.

The issue is whether the district court exceeded its jurisdiction when it allowed individual applicants for governmental services to bring due process claims against officers of the Navajo Nation. We hold that it did not.

### I

The case underlying this request for a writ of prohibition arose generally out of the activities of the Navajo Housing Services Department (NHSD), and particularly from the inability of the Real Parties in Interest (hereafter "Respondents") to obtain certain services from the NHSD. Ralph Begay is the director of the NHSD. James Atcitty is the executive director of the Navajo Nation Division of Community Development. The NHSD administers at least four housing programs with the purpose of constructing, renovating, and weatherizing homes within the Navajo Nation. These are the Navajo Handicapped and Elderly Assistance Through Housing (HEARTH) Program, Weatherization

Program (WP), Housing Improvement Program (HIP), and General Funds Housing Initiative (GFHI).

Navajo Nation general funds are used for the GFHI. The federal government funds the WP and HIP programs and the HEARTH program is funded by both the Navajo Nation and the federal government. As a condition of receiving federal funds, the Navajo Nation agreed to administer the HEARTH, HIP, and WP programs in compliance with applicable federal regulations. The regulations essentially set forth eligibility and selection guidelines and procedures for appeal of adverse determinations.

The Respondents wish to receive assistance under the housing programs. They have taken issue with the procedures by which the NHSD determines the eligibility of applicants for housing services. They argue that the NHSD has not complied with the federal regulations. The current eligibility procedure that the NHSD uses is summarized below:

1) Each Navajo Nation chapter develops a housing priority list of applicants' names. There is no particular, mandated procedure for the chapters to follow in approving applicants for these priority lists.
2) The chapters then refer their lists to the NHSD staff.
3) The NHSD staff performs eligibility determinations of the persons on the chapter lists according to applicable federal regulations detailing specific criteria such as income, family size, condition of present dwelling, age, and disability.

Despite several years of attempts to receive NHSD services, the Respondents have not yet been included on their respective chapter priority lists.

On February 15, 1995, the Respondents filed a class action suit in the Window Rock District Court against the Petitioners. The Respondents amended their complaint on July 18, 1996. We treat the First Amended Complaint as the operative complaint for this proceeding.

The Respondents' First Amended Complaint alleges three claims: 1) The Petitioners deprived them of due process of law when they failed to evaluate their applications for housing services using fair and orderly procedures and in accordance with ascertainable standards; 2) The Petitioners deprived them of due process of law by failing to notify them of the status of their applications, including problems with their applications, rank of application, and right to grieve the NHSD's decisions; and 3) The Petitioners are not complying with expressly applicable laws of the United States and of the Navajo Nation when implementing application procedures for NHSD housing applicants.

The Respondents seek an injunction ordering the Petitioners to provide a fair and legally sufficient procedure for applying for housing services which protects due process rights. The Respondents also want the district court to order the Petitioners to comply with all expressly applicable laws when administering the NHSD's housing programs.

The Petitioners responded by filing motions to dismiss the complaint for failure to state a claim and for lack of subject matter jurisdiction. The motions essentially

claimed that the Navajo Nation Sovereign Immunity Act (Sovereign Immunity Act), 1 N.N.C. §§ 551-555 (1995), barred all of the Respondents' claims. The district court denied the motions and ordered that the case proceed. The Petitioners then brought this petition alleging that the district court exceeded its jurisdiction.

## II

Sovereign immunity defenses are jurisdictional and, if well-founded, provide an appropriate basis for issuing a writ of prohibition. *Watts v. Sloan*, 7 Nav. R. 185 (1995). Questions of governmental immunity present issues which should be resolved early in the litigation to "avoid waste of judicial and litigant resources...." *Navajo Housing Authority v. Dana*, 5 Nav. R. 157, 160 (1987). Also, we have recognized that sovereign immunity constitutes a jurisdictional limitation on the district court's authority. *Johnson v. Navajo Nation*, 5 Nav. R. 192, 195 (1987).

The Sovereign Immunity Act protects the Navajo Nation from suit. 1 N.N.C. §§ 551-555. To overcome this jurisdictional bar, a plaintiff's claims must fall within the class of claims to which the Navajo Nation has consented to suit. In this case, the Respondents rely on section 554.G. of the Sovereign Immunity Act. The relevant part of that section states as follows:

> Any officer, employee or agent of the Navajo Nation may be sued in the Courts of the Navajo Nation to compel him/her to perform his/her responsibility under the expressly applicable laws of the United States and of the Navajo Nation, which shall include the Bill of Rights of the Navajo Nation....

The Navajo Nation Bill of Rights states, in part:

> Life, liberty, and the pursuit of happiness are recognized as fundamental individual rights of all human beings. Equality of rights ... shall not be denied ... nor shall any person within [the Navajo Nation's jurisdiction] be denied equal protection in accordance with the laws of the Navajo Nation, nor be deprived of life, liberty or property, without due process of law.

1 N.N.C. § 3 (1995). As such, an individual may bring suit against a Navajo Nation official where that official has deprived the individual of his or her due process rights.

Although due process is usually a malleable notion subject to changes in jurisprudential attitudes of fundamental fairness, this Court has previously provided some guidance to understanding the concept. We have said that Navajo due process is to be interpreted in light of the customs and traditions, or common law, of the Navajo people, and in a manner that will enhance Navajo culture, tradition and sovereignty. *See, e.g., In re Goldtooth Begay #2*, 7 Nav. R. 29, 31 (1992); *Navajo Nation v. Platero*, 6 Nav. R. 422, 424 (1991); *In re Plummer, Sr.*, 6 Nav. R. 271, 274 (1990); *Billie v. Abbott*, 6 Nav. R. 66, 74 (1988). We have stated that Navajo due process rights are to be "considered in light of the enjoyment and protection of rights by all Navajos," and that claims made under due process

rights "are subject to considerations of the community good and Navajo perceptions of moral right." *Plummer*, 6 Nav. R. at 275-76. In *Platero*, we stated that due process "is fundamental fairness in a Navajo cultural context." 6 Nav. R. at 424. Reemphasizing this point, we stated in *Begay #2* that due process is applied with strict standards of fairness and respect. 7 Nav. R. at 31.[1]

The Navajo principle of *k'e* is important to understanding Navajo due process. *K'e* frames the Navajo perception of moral right, and therefore this Court's interpretation of due process rights. *K'e* contemplates one's unique, reciprocal relationships to the community and the universe. It promotes respect, solidarity, compassion and cooperation so that people may live in *hozho*, or harmony. *K'e* stresses the duties and obligations of individuals relative to their community.[2] The importance of k'e to maintaining social order cannot be overstated. In light of *k'e*, due process can be understood as a means to ensure that individuals who are living in a state of disorder or disharmony are brought back into the community so that order for the entire community can be reestablished.

In order to assert a due process right under Navajo law, a claimant must first assert a property or liberty interest that is protected by due process and which is being deprived in some way by governmental activity. *Yazzie v. Jumbo*, 5 Nav. R. 75, 76 (1986). The Respondents claim that they have a protectable property interest in the governmental services provided by NHSD. The Petitioners argue that the Respondents, as mere applicants for governmental services, do not have a protectable property interest.

Federal courts have recognized that government benefits and entitlements may be protected property interests such that due process protections are required. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 264 (1970) (holding that a person receiving welfare benefits under statutory and administrative standards has a property interest in continued receipt of the benefits such that process is due before the government terminates those benefits); *Escalera v. New York Housing Authority*, 425 F.2d 853, 861 (2d Cir. 1970) (holding that tenants of public housing have a property interest in continued tenancy such that process is due before eviction); *Holmes v. New York Housing Authority*, 398 F.2d 262, 264-65 (2d Cir. 1968) (holding that a state violates due process if it allocates public housing without any standards).

---

1. In order to counter-balance a potentially broad reading of due process, this Court has noted that it should be cautious in finding due process protections where Navajo sovereignty is at issue. In *Billie*, 6 Nav. R. 66, 74 (1988), we stated as follows:

> When Navajo sovereignty and cultural autonomy are at stake, the Navajo courts must have broad based discretion in interpreting the due process clauses of the [Indian Civil Rights Act and the Navajo Bill of Rights], and the courts may apply Navajo due process in a way that protects civil liberties while preserving Navajo culture and self-government.

2. This is a part of the broader Navajo traditional principle of freedom with responsibility. An individual has much freedom in Navajo society, but that freedom must be exercised with respect for self, family, clan relatives, and the community at large.

These entitlements will be considered property if the claimant has a legitimate claim, rather than a mere unilateral expectation, to the benefit. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Federal courts examine independent, but related, sources such as statutes and policy guidelines to determine whether a claimant has the requisite legitimate claim to the benefit. *See id.* Courts may also consider such things as mutual understandings and normative practices. *See id.*; *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (holding that although state law professors do not have tenure, a professor may be able to prove "de facto tenure" or an unwritten, but understood, rule for tenure, such that a property interest would be established). In Navajo law, *k'e* would be the mutual understanding and normative practice that defines a person's legitimate claim to fair procedures.

Due process under Navajo common law requires that the Navajo Nation government "ensure fundamental fairness in all tribal actions." *Keeswood v. Navajo Tribe*, 2 Nav. R. 46, 50 (1979). Thus, for example, we have held that due process provides for notice and an opportunity to be heard, *Begay v. Navajo Nation*, 6 Nav. R. 20, 24 (1988); entitles parties to representation, *Boos v. Yazzie*, 6 Nav. R. 211, 214 (1990); and protects the right to seek political office, *Bennett v. Navajo Board of Election Supervisors*, 6 Nav. R. 319 (1990). These due process protections are similar to those applied by American courts and are concerned with equality in process and not of outcome. That is, everyone is "equal" before the law, and so long as everyone has an opportunity to be heard, the outcome is irrelevant.

The Petitioners urge this Court to follow federal law, particularly *Roth*, 408 U.S. 564, and hold that the Respondents, as mere applicants for governmental benefits, do not have a protectable property interest. However, we do not believe that the inquiry stops there. Traditional Navajo due process encompasses a wider zone of interest than general American due process. In cases concerning entitlement to governmental benefits, Navajo due process protections would extend to outcome, making it very relevant. The Navajo doctrine of distributive justice underlies this reasoning:

> Distributive justice is concerned with the well-being of everyone in a community. For instance, if I see a hungry person, it does not matter whether I am responsible for the hunger. If someone is injured, it is irrelevant that I did not hurt that person. I have a responsibility, as a Navajo, to treat everyone as if he or she were my relative and therefore to help that hungry person. I am responsible for all my relatives. This value which translates itself into law under the Navajo system of justice is that everyone is part of a community, and the resources of the community must be shared with all.

Yazzie, *Life Comes From It: Navajo Justice Concepts*, 24 N.M.L. Rev. 175, 185 (1994).

Distributive justice requires sharing of Navajo Nation resources among eligible applicants. It has its roots in Navajo traditional concepts of community progress through sharing. This is part of Navajo egalitarianism. If the Respondents are eligible for receiving governmental benefits, and although they

are mere applicants, they have a sufficient property interest under Navajo common law to assert due process claims under the Navajo Nation Bill of Rights. We hold that the Respondents in this case have asserted due process rights which would permit them to sue the Navajo Nation.

## III

The Petitioners have raised other immunity issues which would be better addressed on appeal, if necessary, following development of a full record. For purposes of this petition, we address only the due process issue as outlined above.

The alternative writ of prohibition is vacated and the petition for writ of prohibition or other appropriate writ is denied.