◼ LINDA SPADY et al., Respondents, v. MOUNT VERNON HOUSING AUTHORITY, Appellant.— In a proceeding pursuant to article 78 of the CPLR to review appellant's determination declaring petitioners ineligible for public housing accommodations, the appeal is from an interlocutory judgment of the Supreme Court, Westchester County, entered June 28, 1972, which annulled the determination and remanded the matter to appellant for a full evidentiary hearing. Permission to appeal from the interlocutory judgment is hereby granted by Mr. Justice Gulotta (see CPLR 5701, subds. [b], [c]). Interlocutory judgment reversed, on the law, petition dismissed on the merits and determination confirmed, without costs. Petitioners were not entitled to a full evidentiary hearing since they were not tenants in possession sought to be evicted (*Matter of Williams* v. *White Plains Housing Auth.,* 62 Misc 2d 613, affd. 35 A D 2d 965): nor were they entitled to the limited hearing afforded to a holdover tenant asserting a right to renew his lease in a Mitchell-Lama project (*Matter of Fuller* v. *Urstadt,* 28 N Y 2d 315). Where the applicant is not yet in possession and is found ineligible, he is entitled to be apprised of the "reason or reasons for such ineligibility at a personal interview at the office of the housing authority" (Public Housing Law, § 156-a; *Matter of Sumpter* v. *White Plains Housing Auth.,* 29 N Y 2d 420, cert. den. 406 U. S. 928). Following receipt of petitioners' application for housing, the appellant Authority notified them that it had been informed that petitioner Vincent Spady had also been known as Vincent "Bentley" and that he had a criminal record under the latter name, charges which, if true, would result in petitioners' ineligibility. At a subsequent meeting of the Authority, a friend of petitioners spoke on their behalf. Nevertheless, the Authority found petitioners ineligible and so

notified them by letter. Upon reconsideration of the application after the intervention of the Legal Aid Society and others on petitioners' behalf, a conference was held at which all views were aired. This conference was reported to a regular meeting of the Authority. The Authority unanimously adhered to its previous decision not to admit petitioners because they " did not meet the standards of desirability of the State of New York." Such standards are set forth in the State rules and regulations relating to State-aided low-rent housing projects by municipal housing authorities (9 NYCRR 1627–7.2). The Authority's investigation, meetings and conferences disclosed, and the Authority found as facts, that petitioner Vincent Spady had failed to reveal that he had also used the name Bentley; that under the latter name he had been arrested for burglary in the third degree and, in a separate incident, had been indicted for robbery in the second degree and grand larceny in the third degree. It is true that no indictment was ever returned upon the burglary charge (the complaining witness having failed to testify before the Grand Jury) and that the robbery indictment was subsequently dismissed upon Spady's application to be certified to the Narcotic Addiction Control Commission (Mental Hygiene Law, § 210). However, he never denied the acts underlying these charges. Instead, his claim was one of rehabilitation. The Authority was entitled to disbelieve this claim, particularly where one part-time employer, Spady's uncle, would not give him a favorable reference and another more recent full-time employer stated he had fired Spady because of drugs " and a lot of other things ". Accordingly, we conclude that appellant's determination that petitioners were ineligible for public housing is neither arbitrary nor capricious. It has a rational basis and should be confirmed (*Matter of Manigo* v. *New York City Housing Auth.*, 51 Misc 2d 829, affd. 27 A D 2d 803, cert. den. 389 U. S. 1008; see, also, *Matter of Edwards* v. *Mount Vernon Housing Auth.*, 39 A D 2d 543, mot. for lv. to app. den. 31 N Y 2d 641; *Matter of Fuller* v. *Urstadt*, 28 N Y 2d 315, *supra*). Munder, Latham and Gulotta, JJ., concur; Hopkins, Acting P. J., and Benjamin, J., dissent and vote to affirm, Hopkins, Acting P. J., on the opinion of Special Term and Benjamin, J., with the following memorandum: Once one is declared eligible for public housing accommodations a hearing is required if the status of eligibility is sought to be revoked. Further, the mere fact that the applicant is undergoing methadone treatment for narcotic addiction is not a rational basis upon which the Authority may properly determine that he is ineligible. Petitioners applied for public housing on February 8, 1971, using their lawful names. They used forms provided by the Authority for this purpose and correctly gave all of the information requested. No inquiry, oral or written, was made as to use of other names. The Authority conducted an investigation into petitioners' eligibility, found them eligible, assigned them an apartment, and tendered a monthly lease to them which they executed on July 9, 1971. The Authority accepted one month's rent and a security deposit from welfare authorities on petitioners' behalf. Thereafter, the Authority received information adverse to petitioner Vincent Spady. It refused to execute the lease and, after informal conferences, the Authority notified petitioners of their ineligibility by letter dated July 14, 1971. On March 28, 1972, the Authority adhered to its original determination. The bases of ineligibility are fraud in the application in that petitioner Vincent Spady failed to disclose his use of the name Bentley, his arrest record and his certification to NACC as an addict. Whether petitioners are entitled to a hearing on the charges which caused them to be declared ineligible is a matter of first impression to this court under the circumstances presented by this record. In *Matter of Vinson* v. *Greenburgh Housing Auth.*

(29 A D 2d 338, affd. 27 N Y 2d 675) we held that a State agency owning and operating a low-rent public housing project could not arbitrarily evict a low-income tenant under an automatically-renewed monthly lease and that the agency had to meet the requirements of due process by giving the tenant notice of its reasons for the proposed eviction and an opportunity to rebut them. In *Matter of Fuller* v. *Urstadt* (35 A D 2d 537, revd. 28 N Y 2d 315) a majority of this court failed to apply the rule of *Vinson* (*supra*) to a public housing tenant whose three-year lease was not renewed. I dissented on the authority of *Vinson* (*supra* ). On appeal, the Court of Appeals reversed this court's order and granted the petition to the extent of remanding the matter to the State agency for a limited hearing to be held after petitioners would be advised by the agency of the reasons for the refusal to give them a renewal lease. In *Matter of Williams* v. *White Plains Housing Auth.* (35 A D 2d 965) we considered the nature of the hearing to be afforded a public housing tenant whose eviction is sought. Thus, we held that minimal due process standards must be read into the relevant regulation: " Among these standards are adequate notice both of the acts which form the basis of the tenant's alleged undesirability and the consequences of an adverse determination, together with the right to be represented by counsel, to confront witnesses and to challenge the evidence upon which the Authority relies in making its determination." In *Matter of Sumpter* v. *White Plains Housing Auth.* (36 A D 2d 728, affd. 29 N Y 2d 420, cert. den. 406 U. S. 928) the issue before us concerned the rights of a rejected *applicant* for public housing. We held that such a person is not entitled to a full evidentiary hearing in each case of rejection and that, instead, it was sufficient for the Authority to comply with section 156-a of the Public Housing Law, which requires that an *applicant* who is determined ineligible for public housing shall be informed that he may be apprised of the reason or reasons therefor at a personal interview at the Authority's office. We distinguished *Williams* (*supra*) on the ground that it involved the eviction of a tenant already in public housing. This distinction is critical (*Matter of Sumpter* v. *White Plains Housing Auth.*, 29 N Y 2d 420, 424, *supra*). The instant case does not fall neatly into any of the decided cases. It is true that petitioners never entered into actual possession (see *Matter of Williams* v. *White Plains Housing Auth.*, 35 A D 2d 965, *supra*; *Matter of Fuller* v. *Urstadt*, 35 A D 2d 537, revd. 28 N Y 2d 315, *supra*). It is also true that petitioners are not mere applicants (see *Matter of Sumpter* v. *White Plains Housing Auth.*, *supra*), since the Authority admitted in paragraph 22 of its answer to the petition that it had "found the said Petitioner Vincent Spady to be eligible for admission, and agreed to lease an apartment to him and his wife." The Authority also assigned petitioners an apartment, tendered its monthly lease to him and, upon his execution of the lease, accepted the first month's rent and a security deposit. In my opinion, petitioners progressed so far in the tenancy process that they are tenants within the meaning of *Williams, Fuller* and *Sumpter* (*supra*). It follows that petitioners must be afforded an evidentiary hearing at which they shall be afforded the due process rights outlined in *Williams*. My conclusion is supported by *Goldberg* v. *Kelly* (397 U. S. 254, 264), wherein the court stated as to termination of welfare benefits: " Thus the crucial factor in this context — a factor not present in the case of the blacklisted government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended — is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes

immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy ". If a hearing is not required, as the majority hold, I would vote to annul the determination and to direct appellant to provide the subject housing accommodations, or their substantial equivalent, to petitioners. If the facts now before us were established after a hearing, my vote would be the same. It is clear from this record that petitioners were excluded solely because of petitioner Vincent Spady's treatment for narcotic addiction.* The record is completely barren of any evidence to refute his claim of rehabilitation from alleged criminal behavior and heroin use. As to the criminal behavior, the alleged crimes occurred while he was taking heroin. One charge never resulted in an indictment. The other charge, upon which he was indicted, was dismissed pursuant to section 210 of the Mental Hygiene Law. This section allows qualified arrested narcotics addicts to receive a certification to the Narcotic Addiction Control Commission. Such a certification is expressly deemed a *civil* certification in contrast to a criminal conviction under section 208 of the Mental Hygiene Law (cf. § 210, subd. 3, par. d, with § 208, subd. 5) and cannot be used to abridge any of petitioner Vincent Spady's rights as a citizen of the State (Mental Hygiene Law, § 206-b). With respect to petitioner Vincent Spady's narcotic addiction itself, all concerned neutral agencies were unanimous in their unqualified recommendations in support of his application. Miss Addie Corradi, a social worker connected with the Mount Vernon Hospital's Methadone Maintenance Treatment Program, wrote: "This is to certify that Mr. Vincent Spady has been in treatment with this program since June 1, 1971. Since the time of his admission Mr. Spady has made steady progress in his efforts to discontinue drug use and lead a more stable productive life. He is now fully employed and to our knowledge has completely discontinued using drugs. He is, accordingly, in good standing with this clinic. *Our patient's single continuing problem has been and is for decent housing that he can afford within the limits of his wages.* Any assistance that can be extended to Mr. Spady and his family in this area will be greatly beneficial to his continuing progress and his family's welfare" (italics supplied). Mr. William M. Rau, a narcotics parole officer, with the Fulton Rehabilitation Center, a NACC facility, verified Vincent Spady's drug-free state and that he (Spady) reported regularly to the clinic. Edward Gordon, M.D., Director of the Methadone Maintenance Treatment Program operated by the Westchester County Community Mental Health Board, wrote: "I have known Vincent since his admission to the Mount Vernon Hospital Clinic last year and have today spoken to the Clinic Supervisor. Vincent has continued to do well in the clinic and because of this *I feel that I can unqualifiedly recommend him for public housing.* Methadone maintenance has within the last few years become available, in Westchester County as elsewhere, for the treatment of Heroin addiction. Patients who respond successfully discontinue both use of illegal drugs and the criminal activity frequently required to obtain these drugs. They become employable and usually become employed. Their family and personal lives become stable. *During the time they receive Methadone, there is no danger of re-addiction to Heroin.* It is certainly important that people who attempt self-rehabilitation by enrollment in a voluntary

---

* The issue of fraud in petitioners' application is a spurious issue. Petitioners used forms provided to them by the Authority. They were never asked in these forms or orally about the use of other names and petitioner Vincent Spady used his legal name in the application (*Matter of Spady* v. *Mount Vernon Housing Auth.*, 70 Misc 2d 270, 271).

program and demonstrate that they have become rehabilitated be freed from harassing regulations and unfair practices. *By any stretch of the imagination, Mr. Spady ought to be acceptable for public housing*" (italics supplied). Herbert Cave, Spady's personal physician, wrote that the New York City Housing Authority not only accepted individuals undergoing methadone treatment " but in most instances gave them preferential treatment in order to assist in their rehabilitation." Leonard Casey, service manager at Spady's last place of employment, affirmed under oath that Spady was discharged from that employment because of a slowdown and not for any reason related to drugs. The State has spent countless millions of dollars to combat drug addiction and it is the policy of the State to treat drug addiction as a disease by comprehensive programs of treatment (Mental Hygiene Law, § 200). Petitioner Vincent Spady is successfully undergoing treatment and shows no signs of regression. Neutral officials of State and municipal agencies have vouched for him. To deprive him of public housing accommodations now is yet another unfortunate revolution in the "revolving door" of drug addiction (see *People* v. *Maranez*, 39 A D 2d 589, affd. 31 N Y 2d 828). I conclude that the determination of the Authority in declaring petitioners ineligible lacks rational basis and was properly annulled (CPLR 7803, subd. 3; *Matter of Sanders* v. *Cruise*, 10 Misc 2d 533; *Matter of Manigo* v. *New York City Housing Auth.*, 51 Misc 2d 829, affd. 27 A D 2d 803, cert. den. 389 U. S. 1008). Accordingly, petitioners were entitled to a hearing when, in effect, the previous grant of public housing accommodations was revoked by appellant's refusal to sign the lease. In addition, appellant's ground for revocation — petitioner Vincent Spady's narcotic addiction treatment — is wholly without rational basis, at complete variance with the State's public policy of treating narcotic addiction as a disease, and contrary to the nature and purpose of public housing. [70 Misc 2d 270.]